## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 11-60722-CIV-ROSENBAUM (CONSENT)

JET PAY, LLC,
a Texas limited liability company,

                Plaintiff,

v.

RJD STORES, LLC, d/b/a
THE BEDROOM SPACE,
a Florida limited liability company, and
HEATHER CANDICE FINGERER, an
individual,

                Defendants.

_____/

### <u>ORDER</u>

This matter is before the Court upon Defendant Heather Candice Fingerer's Motion to Dismiss Amended Complaint [D.E. 23]. The Court has carefully reviewed Defendant Fingerer's Motion, all filings in support thereof and in opposition thereto, and the entire record and has heard argument on Defendant Fingerer's Motion on July 7, 2011. After consideration, the Court grants Defendant Fingerer's Motion to Dismiss for the reasons set forth below.

### *<u>I.  Background</u>*

This case arises out of a contractual dispute regarding payments allegedly due to Plaintiff Jet Pay, LLC ("Jet Pay"), by Defendant RJD Stores, LLC ("RJD, LLC"), and guaranteed by Defendant Heather Candice Fingerer ("Fingerer"), for credit-card processing services that Jet Pay claims to have provided to RJD, LLC. *See* D.E. 21 at ¶¶ 1, 16, 20. In its Amended Complaint, Jet Pay sets forth

one claim against RJD, LLC for breach of contract (Count I) and one claim against Fingerer for breach of personal guaranties (Count II).  Fingerer moves to dismiss the Amended Complaint as against her (Count II), suggesting that the contract upon which Jet Pay relies in seeking to enforce Fingerer's alleged guarantee does not serve as Fingerer's guarantee of payment to Jet Pay by RJD, LLC.  To the contrary, Fingerer contends, the underlying contract is not between Jet Pay and RJD, LLC.  Instead, Fingerer continues, RJD, LLC, is not even a party to that contract.  Consequently, Fingerer concludes, she did not guarantee RJD, LLC's payment.

## A.  The Contracts at Issue

Significantly, this case effectively involves two contracts: an agreement between Jet Pay and a merchant for credit-card processing services ("Agreement"), and a separate agreement between Jet Pay and Fingerer guaranteeing the merchant's payment for the credit-card processing services ("Guaranty").  Both of these contracts are contained within an eight-page document attached to the Amended Complaint.  *See* D.E. 21-1.  This document, in turn, includes two major parts — the Merchant Application and the Merchant Agreement.  Each of the two parts refers to the other and incorporates terms and conditions of the other.  Located within the Merchant Application, the separate contractual Guaranty between Fingerer and Jet Pay appears.[1]

### 1. The Agreement

Beginning with a review of the Agreement, the Merchant Application provides a space for the "MERCHANT NAME (DBA or Trade Name), which is filled out as "The Bedroom Space."

---

[1]This Order refers collectively to the Merchant Application and the Merchant Agreement as the "Agreement."  Any reference in this Order to only one part of the Agreement specifies either "Merchant Application" or "Merchant Agreement."  Although the Guarantee may be found within the Merchant Application, the term "Agreement" in this Order does not include the Guarantee unless this Order expressly so states.

D.E. 21-1 at 1.  Next to this line is a blank for "CORPORATE/LEGAL NAME (If Different)," the response for which states "RJD Stores Group, Inc."  *Id.*  The form also includes a request for "FEDERAL TAX ID#."  *Id.*  In this space, the tax number of RJD, Inc., is set forth.  *Id.*  In addition, a box labeled "OWNERSHIP" provides several alternative choices for describing the form of ownership of the merchant.  *Id.*  Among others, the choices "Corporation" and "LLC State: _____" are suggested.  *Id.*  On the Merchant Application, the box marked "Corporation" is checked.  *Id.*

Another section of the Merchant Application contains a provision entitled "Merchant Application Acceptance."  *Id.* at 2.  This part reads,

> By executing this Merchant Application on behalf of the merchant described above (the "Merchant"), the undersigned individual(s) ; (i) represent(s) that all information contained in this Merchant Application is true, correct and complete as of the date of this Merchant Application, and that such individual(s) have the requisite corporate power and authority to complete and submit the Merchant Application and make and provide the acknowledg[]ments, authorizations and agreements set forth below, both on behalf of the Merchant and individually; (ii) acknowledge(s) that the information contained in this Merchant Application is provided for the purpose of obtaining, or maintaining a merchant account with [Jet Pay] and Bank on behalf of the Merchant; . . . and (iv) agree, on behalf of the Merchant and in the event this Merchant Application is accepted and executed by Bank and [Jet Pay], to all of the terms and conditions set forth in the Merchant Agreement attached to this Merchant Application and the Fee Schedule set forth above. . . .

*Id.*  On behalf of "Merchant" is a signature that purports to be that of Fingerer.  No one else's signature on behalf of "Merchant" appears at this part of the Merchant Application.

The section that follows is called "Merchant Agreement Acceptance."  This portion of the Merchant Application states, "By signing below, the parties acknowledge they have read and agree to the terms of the Merchant Agreement.  If the merchant is a corporation, its proper Corporate

Officers must sign. . . ." *Id.*  Once again, only the purported signature of Fingerer appears.

Next, a section labeled "Corporate Resolution" reads

> 1.  I, Heather Fingerer [(]Corporate Secretary[)],[] the duly elected, qualified and acting sec [(]Office Title[)] of [RJD, Inc.] [(]Legal Corporate Name of Co.[)], a Florida [(] Incorporation States[)] (the "Company"), do hereby certify as follows:

> The following resolutions were fully adopted by the board of directors/managing member(s)/general partners (circle one) of the Company: WHEREAS, the Company desires to enter into a Merchant Agreement . . . with Bank and [Jet Pay], . . . a copy of which Merchant Agreement is attached as Exhibit "A"; WHEREAS, pursuant to the terms of the Merchant Agreement, Bank and [Jet Pay] will provide certain credit card financing and processing for VISA, MASTERCARD and/or Discover Network credit card purchases made by the Company's customers; WHEREAS, pursuant to the terms of the Merchant Agreement, (a) the Company may be required to establish a Reserve Account as defined in the Merchant Agreement, and (b) Bank may require the Company to direct certain funds relating to credit card purchases to such Reserve Account . . . .  RESOLVED FURTHER that the appropriate officer(s) of the Company is/are hereby authorized to enter into such additional agreements, and take such additional actions as may be reasonably required by Bank or [Jet Pay] in connection with the Merchant Agreement . . . .

> 2.  Each person listed below (as "Officer) (i) holds the office in the Company indicated opposite his or her name on the date hereof; (ii) the signature appearing opposite his or her name is the genuine signature of each such officer, (iii) each such Officer, acting individually, is authorized to execute and deliver the Merchant Agreement and each of the agreements and documents contemplated by the Merchant Agreement (collectively, the "transaction Documents") on behalf of the Company, and (iv) each such Officer, acting individually, is authorized to perform the Company's obligations under the Transaction Documents on behalf of the Company:

*Id.*  Underneath this "corporate resolution," the names, titles, and purported signatures of the

following individuals appear: (1) Raffe Lahav, President; (2) David Fingerer, Vice President; and

(3) Heather Fingerer, Secretary.  Then an additional purported signature of Fingerer, identified at this point as "corporate secretary," appears under the statement, "IN WITNESS WHEREOF, I have executed this Certificate this 20th day of October 2010.

The second part of the contract, the Merchant Agreement, defines a number of terms as used in the Merchant Agreement.  Among these, the document explains, "Parties.  The parties to this Agreement are ("Bank," as marked and described below), [Jet Pay], . . . and the Merchant set forth on the Merchant's Application form to which this Agreement is attached ("Merchant").  *Id.* at 3, ¶ 1.  The Merchant Agreement then sets forth the obligations of each of the parties with regard to the processing of and payment for credit card services.  *See, generally, id.* at 3-8.  An additional provision of the Merchant Agreement is entitled, "Governing Law."  *Id.* at 7, ¶ 47.  It reads, "This Agreement shall be governed and construed in accordance with the laws of the State of Texas, without regard to internal principles of conflict of laws, and federal law."  *Id.*  Every page of the Merchant Agreement bears the handwritten initials "HF."

At the end of the Merchant Agreement is "Schedule A," a one-page document setting forth, among other information, credit and debit card rates and fees.  D.E. 21-1 at 8.  The bottom of Schedule A contains a signature line for "Heather C. Fingerer" and purports to bear Fingerer's signature.

*2.  The Guaranty*

The Guaranty appears in a separate section of the Merchant Application entitled "Guarantor of Payment."  This section provides,

> By signing below, each individual or entity (a "Guarantor") . . . unconditionally guarantees to [Jet Pay] and the Bank the prompt payment and performance of all obligations of the Merchant

identified above under the Merchant Agreement (as that term is defined above), including, without limitation, all promises and covenants of the Merchant, and all amounts payable by the Merchant under the Merchant Agreement, including without limitation, interest, costs and other expenses, such as attorney's fees and court costs. This means, among other things, that [Jet Pay] or Bank can demand performance or payment from any Guarantor if the Merchant fails to perform any obligation or pay what the Merchant owes under the Agreement. Each Guarantor agrees that . . . her liability under this guaranty will not be faulted or canceled because (1): the Merchant Agreement cannot be enforced against the Merchant; . . . . (5) anything else happens that may affect the rights of either [Jet Pay] or Bank against the Merchant . . . . Guarantor further agrees that: . . . (b) [Jet Pay] and Bank each can demand payment from such Guarantor without first seeking payment from the Merchant . . . ; and (c) such Guarantor will pay all court costs, attorney's fees and collection costs incurred by either [Jet Pay] or Bank in connection with the enforcement of any terms of the Merchant Agreement or this guaranty . . . .

*Id.*  A line under this statement calls for the "[s]ignature of [o]fficer/[o]wner" of "Merchant: Principal 1."  The purported signature of Fingerer appears on this line.

## B.  The Corporate Records

RJD, LLC's 2009 and 2010 Amended Annual Reports filed on September 30, 2009, and May 1, 2010, reflect Raffe Lahav as the registered agent and a managing member/manager.  D.E. 21-3 at 1-2.  In addition, David Fingerer appears as a managing member/manager.  *Id.*  Heather Fingerer is listed as the secretary, and the document purports to bear the authorized electronic signature of David Fingerer.  *Id.*

As noted previously, Florida corporate records show that RJD, LLC, applied to register the fictitious name "The Bedroom Space" on July 25, 2007.  D.E. 21-2.  It further indicates a federal employer tax identification number for RJD, LLC, that differs from the one that appears on the Merchant Application.  *See id.*  This application for registration of fictitious name also purports to

bear the authorized electronic signature of David Fingerer.  *Id.*

Turning to the corporate records of RJD, Inc., information filed with the State of Florida indicates that Raffe Lahav serves as the registered agent, director, and president of the company, and David Fingerer holds the positions of director and vice president of RJD, Inc.  D.E. 23-1.  Heather Fingerer does not appear on RJD, Inc.'s corporate records.  RJD, Inc., and RJD, LLC, list the same principal and mailing addresses as the other.

## C.  Procedural History

Jet Pay filed the original Complaint in this matter on April 5, 2011.  *See* D.E. 1.  The original Complaint contained one count against RJD, LLC, for breach of contract and one count against Fingerer for breach of personal guaranties.  *See id.*  The Honorable James I. Cohn granted Defendant Fingerer's Motion to Dismiss the Complaint [D.E. 8] "because the [Merchant] Agreement does not mention Defendant [RJD, LLC,] and an extra step not discussed in the Complaint is required to link Defendant Fingerer to [RJD, LLC] . . . ."  D.E. 19 at 4.

On May 18, 2011, Jet Pay filed the pending Amended Complaint, once again alleging breach of contract and breach of personal guaranties against RJD, LLC, and Fingerer, respectively.  *See* D.E. 21.  Attached to the Amended Complaint as exhibits were the Merchant Application and Merchant Agreement and Florida corporate records showing that the d/b/a of "The Bedroom Space" is registered to RJD, LLC, and providing officer information for RJD, LLC.

Once again, Fingerer filed a motion seeking to dismiss the pleading.  *See* D.E. 23.  In her Motion to Dismiss, Fingerer argues first that RJD, Inc., is a party to the Agreement in this matter and is therefore an indispensable party to this action, and Jet Pay's failure to name RJD, Inc., as a defendant requires dismissal.  D.E. 23 at 2, ¶ 7.  Alternatively, Fingerer suggests, if Jet Pay does not

consider RJD, Inc., to be a party to the Agreement, "the Amended Complaint should be required to explain why the basic text of the Agreement is incorrect or requires amendment." *Id.* at 3, ¶ 8.

Subsequently, the parties consented to magistrate judge jurisdiction, and the matter was transferred to me on June 15, 2011. *See* D.E. 30, D.E. 31. On July 7, 2011, the Court held a hearing on Fingerer's Motion to Dismiss the Amended Complaint. This matter is now ripe for decision.

## *II.  Discussion*

### A.  Governing Law

The Amended Complaint asserts jurisdiction in this Court based on diversity. *See* D.E. 21 at ¶¶ 5-6. As a result, the Court applies federal law to procedural issues and state law to substantive matters. *McMahan v. Toto*, 256 F.3d 1120, 1131-32 (11th Cir. 2001) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). The forum state's choice-of-law rules, in turn, govern which state's substantive law applies. *Am. Family Life Assurance Co. of Columbus v. U.S. Fire Co.*, 885 F.2d 826, 830 (11th Cir. 1989) (citation omitted).

"Generally, Florida enforces choice-of-law provisions unless the law of the chosen forum contravenes strong public policy." *Mazzoni Farms, Inc. v. E.I. DuPont de Nemours and Co.*, 761 So. 2d 306, 311 (Fla. 2000) (citation omitted). Indeed, Section 671.105(1), Fla. Stat. (2002), expressly anticipates that parties may enter into choice-of-law provisions: "[W]hen a transaction bears a reasonable relation to this state and also to another state or nation, the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties." *See also Mazzoni Farms, Inc.*, 761 So. 2d at 311 n.6 (citing Section 671.105(1), Fla. Stat.).

A review of the contract at issue in this case and attached to the Amended Complaint reveals that the parties to the contract agreed that it would "be governed and construed in accordance with

the laws of the State of Texas, without regard to internal principles of conflict of laws, and federal law." D.E. 21-1 at 7, ¶ 47. As of this point, Fingerer has not suggested that the substantive law of any other jurisdiction should apply. Nor at this time does the Court independently discern any "strong public policy" reason why the general presumption in favor of choice-of-law provisions should not be followed. Accordingly, the Court finds that Texas law governs issues of contractual interpretation in this matter.

**B.  Standard on a Motion to Dismiss**

Fingerer's Motion to Dismiss is, of course, procedural, so federal law applies when determining the appropriate standard for assessing the sufficiency of the Complaint. Nevertheless, Fingerer's Motion does not specify pursuant to which rule she seeks dismissal of the Amended Complaint. Upon review of the Motion and consideration of the issues it raises, this Court finds Rules 12(b)(6) and 12(b)(7), Fed. R. Civ. P., to be the most applicable here.

*1.  Rule 12(b)(6)*

The Court begins by addressing Rule 12(b)(6). Rule 12(b)(6), Fed. R. Civ. P., governs motions to dismiss for failure to state a claim. That rule provides, in relevant part,

> **(b)** **How to Present Defenses.** Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
>
> **(6)** failure to state a claim upon which relief can be granted; . . . .

*Id.* Thus, the Court considers the Federal Rules of Civil Procedure as they set forth the requirements for stating a claim.

Rule 8(a)(2), Fed. R. Civ. P., demands that a pleading contain "a short and plain statement

-9-

of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint need not provide detailed factual allegations, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 958 (11th Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Similarly, "naked assertion[s]" bereft of "further factual enhancement" do not suffice. *Twombly*, 550 U.S. at 555, 557. As the Supreme Court has explained, a complaint's "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "Moreover, the facts supporting the claim must be 'consistent with the allegations in the complaint.'" *Wilchombe*, 555 F.3d at 958 (quoting *Twombly*, 550 U.S. at 562).

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true. *Bell v. J.B. Hunt Transp., Inc.*, 2011 WL 1935557, *2 (11th Cir. May 20, 2011) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 72 (1984)). But "[c]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." *Id.* (quoting *Jackson v. BellSouth Telecomm'ns*, 372 F.3d 1250, 1263 (11th Cir. 2004)) (internal quotation marks omitted); *see also Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949-51 (2009). In short, the allegations in a complaint "must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570).

## 2. *Rule 12(b)(7)*

Rule 12(b)(7), Fed. R. Civ. P., states, in pertinent part,

> **(b)**     **How to Present Defenses.** Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party

-10-

may assert the following defenses by motion:

**(7)**     failure to join a party under Rule 19.

The Court, therefore, turns to Rule 19, Fed. R. Civ. P.

Rule 19 adopts a "two-part test for determining whether a party is indispensable." *Challenge Homes, Inc. v. Greater Naples Care Ctr.*, 669 F.2d 667, 669 (11th Cir. 1982). At the first stage, the court applies the factors articulated at Rule 19(a), Fed. R. Civ. P., to ascertain whether the person or entity at issue is one who should be joined if feasible. *Id.* If so, and if that person or entity cannot be joined, the court proceeds to the second inquiry and considers whether, in light of the factors stated at Rule 19(b), the litigation may continue in that person or entity's absence. *Id.*

Because the indispensability issue may be disposed of at the first step in this case, the Court pauses only to set forth Rule 19(a), Fed. R. Civ. P.:

**(a)**     **Persons Required to Be Joined if Feasible.**

**(1)**     **Required Party.** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

**(A)**     in that person's absence, the court cannot accord complete relief among existing parties; or

**(B)**     that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

**(i)**     as a practical matter impair or impede the person's ability to protect the interest; or

**(ii)**     leave an existing party subject to a

> substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

When a court decides whether a person or entity is one who should be joined under Rule 19(a), "'pragmatic concerns, especially the effect on the parties and the litigation,' control." *Challenge Homes, Inc.*, 669 F.2d at 670 (citation omitted).

## C. Sufficiency of the Amended Complaint

### *1. RJD, Inc., is Not an Indispensable Party Under Rule 19*

Here, Fingerer urges that RJD, Inc., is the "Merchant" with whom Jet Pay entered into the Agreement. As such, Fingerer reasons, RJD, Inc., is a joint obligor with Fingerer. Thus, Fingerer concludes, RJD, Inc., is an indispensable party to the litigation.

To resolve the alleged indispensability of RJD, Inc., both Fingerer and Jet Pay direct the Court to *Brackin Tie, Lumber & Chip Co., Inc. v. McLarty Farms, Inc.*, 704 F.2d 585 (11th Cir. 1983) ("*Brackin*"). In *Brackin*, the plaintiff had sued McLarty Farms for breach of lease. *Id.* at 586. Because the lease at issue in that case named both the defendant, McLarty Farms, and Falcon Homes as lessees, McLarty farms moved to join Falcon Homes as a party to the lawsuit. *Id.* The district court denied the motion, and McLarty Farms appealed.

The Eleventh Circuit affirmed. Acknowledging that joint obligees are generally viewed as indispensable parties, the court noted that the opposite was true of joint obligors. *Id.* As the court explained, "In *Black's Law Dictionary*, an obligee is defined as 'the person in favor of whom some obligation is contract,' whereas an obligor is defined as the 'person who has engaged to perform some obligation.'" *Id.* (citing *Black's Law Dictionary* 1226 (4th ed. 1968)). Although the court further recognized that two out-of-jurisdiction cases had found obligors to be indispensable parties,

the Eleventh Circuit approvingly set forth the district court's reasoning for rejecting those cases:

> In this case, the joinder of Falcon would cause this court to lose its subject matter jurisdiction and dismissal would be mandated [because the addition of Falcon would have destroyed complete diversity]. Since joint obligors are not generally held to be indispensable parties, it follows that 'in equity and good conscience,' it must be concluded that 'the action should proceed among the parties before [the Court.]

*Id.* at 587.

Jet Pay contends that *Brackin* stands for the proposition that joint obligors are not indispensable parties, and, thus, even if RJD, Inc., is a party to the Agreement with Jet Pay, RJD, Inc., cannot be an indispensable party. Fingerer, on the other hand, seeks to limit *Brackin*'s holding by suggesting that a joint obligor is not indispensable only when the addition of a joint obligor to the action would defeat jurisdiction. Since that is not a problem in the pending matter, Fingerer urges, RJD, Inc., should be viewed as an indispensable party under the considerations stated in Rule 19(a), Fed. R. Civ. P.

The problem with the parties' analyses stems from the fact that both parties assume that Fingerer is simply a joint obligor to the Agreement. In *Brackin*, however, where the court concluded that McLarty Farms and Falcon Homes were joint obligors, both entities were lessees. As a result, both entities found to be joint obligors took on primary obligations under the lease contract at issue in that matter.

Here, however, the Merchant is the primary obligor, and Fingerer has what is effectively a separate contract with Jet Pay under which she allegedly guaranteed the Merchant's payments under the contract between Jet Pay and the Merchant. Accordingly, Fingerer and the Merchant — whether that Merchant is RJD, LLC, or RJD, Inc., — are not joint obligors in the sense that McLarty and

Falcon Homes were in *Brackin*. Indeed, the cause of action that Jet Pay alleges against Fingerer —
breach of guaranty, as opposed to breach of contract — implicitly recognizes the difference in
position between the Merchant and Fingerer. As a result of this difference, the Merchant is not a
party to the Guaranty contract between Jet Pay and Fingerer. To the contrary, the language of the
Guaranty expressly anticipates what is effectively a contract between Jet Pay and Fingerer that is
separate from that between Jet Pay and the Merchant:

> By signing below, each individual or entity (a "Guarantor") . . .
> unconditionally guarantees to [Jet Pay] and the Bank the prompt
> payment and performance of all obligations of the Merchant
> identified above under the Merchant Agreement (as that term is
> defined above), including, without limitation, all promises and
> covenants of the Merchant, and all amounts payable by the Merchant
> under the Merchant Agreement, including without limitation, interest,
> costs and other expenses, such as attorney's fees and court costs.
> This means, among other things, that [Jet Pay] or Bank can demand
> performance or payment from any Guarantor if the Merchant fails to
> perform any obligation or pay what the Merchant owes under the
> Agreement. ***Each Guarantor agrees that . . . her liability under this
> guaranty will not be faulted or canceled because (1): the Merchant
> Agreement cannot be enforced against the Merchant; . . . . (5)
> anything else happens that may affect the rights of either [Jet Pay]
> or Bank against the Merchant . . . . Guarantor further agrees that:
> . . . (b) [Jet Pay] and Bank each can demand payment from such
> Guarantor without first seeking payment from the Merchant . . .*** ;
> and (c) such Guarantor will pay all court costs, attorney's fees and
> collection costs incurred by either [Jet Pay] or Bank in connection
> with the enforcement of any terms of the Merchant Agreement or this
> guaranty . . . .

D.E. 21-1 at 2 (emphasis added). Consequently, even if this Court agreed with the minority rule
holding joint obligors to be indispensable parties, that would not be a basis for finding RJD, Inc., to
be an indispensable party here because, quite simply, the Merchant — whoever that may be — is not
a joint obligor on the Guaranty. Instead, the Merchant is liable to RJD, Inc., only under the
Agreement, not under the Guaranty.

-14-

Nor does any aspect of Rule 19(a) render RJD, Inc., an indispensable party.  First, with respect to Rule 19(a)(1)(a), in the absence of RJD, Inc., the Court can still accord complete relief among Jet Pay and Fingerer.  This is because under the Guaranty, Jet Pay can demand full payment directly from Fingerer if the Court concludes that whoever is the Merchant under the Agreement failed to pay as required by the Agreement.  And the terms of the Guaranty further provide that Jet Pay need not demand overdue payment from the Merchant before seeking enforcement of the Guaranty against Fingerer.  Thus, relief in this matter turns on whether Jet Pay can prove that the Merchant failed to pay Jet Pay as required under the Agreement.  If Jet Pay can so demonstrate, Fingerer may be solely liable under the Guaranty, but if Jet Pay cannot make such a showing, Fingerer appears not to be liable under the Guaranty.  Thus, whether RJD, Inc., is a party to this matter or not, even assuming, *arguendo*, that RJD, Inc., is the Merchant, the Court may accord complete relief.

As to Rule 19(a)(1)(B), RJD, Inc., has not claimed an interest relating to the subject of this action.  Moreover, as the action is currently pled, it does not, on its face, involve an interest of RJD, Inc., because the Amended Complaint alleges that RJD, LLC — not RJD, Inc. — is bound by the Agreement with Jet Pay, and that theory appears to present one viable construction of the Agreement, as explained *infra* at Section II.C.2.  Furthermore, even if RJD, Inc., had an interest in the Guaranty or Agreement, without being a party to this litigation, RJD, Inc., would not be legally bound by a judgment in this case under principles of *res judicata* or collateral estoppel.  *See Challenge Homes*, 669 F.2d at 670 (citing *Stovall v. Price Waterhouse Co.*, 652 F.2d 537, 540 (5th Cir. 1981)).  Rather, RJD, Inc., would have a full opportunity to litigate its participation in the Agreement should either Jet Pay or Fingerer sue it.  *See id.* at 670-71.  With respect to potential prejudice to Fingerer, to the

extent that Fingerer wishes to argue in defending herself that the Agreement binds RJD, Inc., not RJD, LLC, she may do so and she or Jet Pay may or may not then choose to seek to implead RJD, Inc., under Rule 14, Fed. R. Civ. P., at that time.[2]  Because nothing renders RJD, Inc., a necessary party at this time, however, Fingerer's Motion to Dismiss under Rule 12(b)(7) must be denied.

### 2.  The Amended Complaint Does Not Satisfy the Twombly/Iqbal Pleading Standard

To assert a claim for breach of guaranty under Texas law, a party must allege facts that, accepted as true for purposes of evaluating the pending Motion to Dismiss, plausibly establish the following elements: "(1) the existence and ownership of the [g]uaranty; (2) the performance of the terms of the contract by the [holder of the guaranty]; (3) the occurrence of the condition on which liability is based, and (4) [the guarantor's] failure or refusal to perform the promise."  *Stone v. Midland Multifamily Equity REIT*, 334 S.W.3d 371, 378 (Tex. Ct. App. 2011) (citing *Corona v. Pilgrim's Pride Corp.*, 245 S.W.3d 75, 80 (Tex. Ct. App. 2008) (citation omitted)); *Roye Enters., Inc. v. Roper*, 2005 WL 1791964, *3 (Tex. Ct. App. July 28, 2005) (citing *Byrd v. Estate of Nelms*, 154 S.W.3d 149, 157 (Tex. Ct. App. 2004)).  Although the Amended Complaint avers facts demonstrating most of these requirements, it does not set forth allegations that, if true, would establish the fourth element.

Addressing the elements in order, Paragraph 9 asserts that RJD, LLC, entered into the Agreement for credit-card processing services with Jet Pay.  D.E. 21 at ¶¶ 9-13.  In Paragraph 16, the Amended Complaint alleges that Fingerer "agreed to personally guarantee the prompt payment and performance of all obligations of [RJD, LLC,] under the Agreement."  *Id.* at ¶ 16.  In addition,

---

[2]The Court expresses no opinion regarding whether such a motion, if made, would be granted.

the Amended Complaint attaches a copy of the Agreement and Guaranty.  *See* D.E. 21-1.  Rule 10(c),

Fed. R. Civ. P., contemplates that "[a] copy of a written instrument that is an exhibit to a pleading

is part of the pleading for all purposes."  As a result, in this case, the Agreement and other exhibits

to the Amended Complaint constitute a part of the Amended Complaint, and the Court considers the

contents of these documents in assessing the sufficiency of the Amended Complaint.  To the extent

that "a conflict [exists] between allegations in a pleading and exhibits thereto, it is well settled that

the exhibits control."  *Griffin Inds., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) (citation

omitted) (internal quotation marks omitted).  Similarly, "[i]f the appended document . . . reveals facts

which foreclose recovery as a matter of law, dismissal is appropriate."  *Id.* (citation omitted) (internal

quotation marks omitted).

Although Fingerer contends that the terms of the Agreement necessarily contradict Jet Pay's

representations in the Amended Complaint that RJD, LLC, entered into the Agreement with Jet Pay

because RJD, Inc., was the only entity that contracted with Jet Pay under the Agreement, the Court

respectfully disagrees.  While one possible interpretation of the Agreement considers Jet Pay and

RJD, Inc., as the parties to it, another possible construction views Jet Pay and RJD, LLC, as the

parties to the contract.

Fingerer asserts that "the Agreement plainly identifies RJD Inc. as the contracting party."

D.E. 29 at 1.   In support of this proposition, Fingerer points to the following: "(a) the

'Corporate/Legal Name' of the contracting entity detailed in the top-right corner of the first page of

the Agreement; (b) the companion 'Federal Tax ID' identified in the first page of the Agreement,

which . . . is the identification number of RJD Inc.; and (c) the Corporate Resolution located on the

second page of the Agreement."  D.E. 23 at 2, ¶ 5.  In addition, the Merchant Application identifies

-17-

the applicant as having the ownership form of a corporation, as opposed to an "LLC."  D.E. 21-1 at 1.

Jet Pay retorts that "The Bedroom Space" appears in the blank for "MERCHANT NAME (DBA or Trade Name)," and RJD, LLC — not RJD, Inc. — registered the fictitious name "The Bedroom Space."  Second, Fingerer signed the Merchant Application Acceptance, and she executed the Corporate Resolution as "secretary."  Fingerer, however, does not appear on RJD, Inc.'s corporate records as "secretary" or as any other position, so, Jet Pay urges, Fingerer could not have signed the contract on behalf of RJD, Inc.  She is identified as "secretary," though, on RJD, LLC's corporate filings.  For these reasons, Jet Pay contends, RJD, LLC, entered into the contract with Jet Pay.

The Court finds that RJD, LLC; RJD, Inc.; or both could be parties to the contract.  First, RJD, LLC, could be construed as a party to the contract.  Under Florida law, which governs the use of fictitious names by those registering a fictitious name with the State of Florida, "A person may not engage in business under a fictitious name unless the person first registers the name with the [state] by filing a sworn statement listing [required information] . . . ."  Fla. Stat. § 865.09(3).[3]  Moreover, registration of a fictitious name in Florida is valid for five years.  Fla. Stat. §§ 865.09(5).  In this case, the Amended Complaint avers that "['The Bedroom Space'] is a fictitious name registered in Florida to [RJD, LLC]."  D.E. 21 at ¶ 11.  And a review of the Application for Registration of a Fictitious Name attached to the Amended Complaint reveals that RJD, LLC, filed

---

[3]Although Texas law governs construction of the Agreement in this matter, because the use of a fictitious name by a person or company doing business in Florida is regulated by Florida law, the Court considers Florida law on fictitious names in interpreting what significance the use of a fictitious name on a contract might have.

the document with the State of Florida on July 25, 2007.  *See* D.E. 21-2.  Thus, on October 18, 2010,

when the contract was executed on behalf of the "Merchant," RJD, LLC's registration of "The

Bedroom Space" remained in full force and effect.

In addition, the purported signature of Fingerer — and only Fingerer — to the Merchant

Application Acceptance and the Merchant Agreement Acceptance suggests that the true legal party

in interest was RJD, LLC, because the Amended Complaint alleges that Fingerer is represented to

be an officer of only RJD, LLC — not RJD, Inc. — in official corporate filings with the State of

Florida.  *See* D.E. 21 at ¶¶12-15.  Therefore, the Amended Complaint reasonably implies that

Fingerer had the authority to bind only RJD, LLC, and not RJD, Inc.  As a result, a reasonable

inference from the allegations contained in the Amended Complaint is that RJD, LLC, is the

Merchant bound by the Agreement.  Furthermore, because a company using a fictitious name can

sue or be sued in that name under Texas law, *see* Rule 28, Tex. R. Civ. P., the fact that the name

"RJD, LLC" does not appear anywhere on the Agreement does not seem to present an impediment

to Jet Pay's contention that RJD, LLC, is the Merchant in the Agreement since RJD, LLC's fictitious

name is identified on the Agreement as "MERCHANT NAME (DBA or Trade Name)."

Turning to the question of whether RJD, Inc., could be viewed as the Merchant under the

Agreement, as previously noted, although the Agreement appears to bear a fictitious name in the

MERCHANT NAME" box, the Agreement, nonetheless, sets forth RJD, Inc., as the

"CORPORATE/LEGAL NAME (If Different)," along with RJD, Inc.'s federal tax identification

number.  D.E. 21-1 at 1.  Similarly, the Agreement describes the ownership of the Merchant as

"Corporation," not "LLC."  *Id.*  All of these things suggest that RJD, Inc., not RJD, LLC, is the

Merchant under the Agreement.  Moreover, under Florida law, where an entity uses a fictitious name

in business when that entity has not registered it, the failure to register "does not impair the validity of [the] contract . . . and does not prevent such business from defending any action, suit, or proceeding . . . ." Fla. Stat. § 865.09(9)(b).  For these reasons, a viable theory may consider RJD, Inc., to be the Merchant on the Agreement.  Finally, it may be possible that both RJD, LLC, and RJD, Inc., could be considered the Merchant in the Agreement.

Because a plaintiff is the "master of the complaint and . . . selects the claims that will be alleged in the complaint," *Horne v. Potter*, 392 F. App'x 800, *4 (11th Cir. 2010) (quoting *Danley v. Allen*, 540 F.3d 1298, 1306 (11th Cir. 2008) (internal quotation marks omitted)), Jet Pay had the right to choose how it wished to plead its breach-of-guaranty claim in this case.  Seeking to hold Fingerer liable on the Guaranty for an alleged breach of the Agreement by RJD, LLC, but not by RJD, Inc., is a risk that Jet Pay may elect to take as the master of its complaint, so long as one plausible reading of the Agreement includes RJD, LLC, as the Merchant.  For the reasons, discussed above, the Court finds that it does.  Consequently, the Amended Complaint adequately alleges facts plausibly demonstrating the existence of the first element of the breach-of-guaranty cause of action.

As for the second element — the performance of the terms of the contract by Jet Pay, in this case — the Amended Complaint similarly asserts facts that, if true, would establish this second requirement.  In this regard, Paragraph 20 claims that "[RJD, LLC,] breached the Agreement by failing to properly pay contract monies due and owing to [Jet Pay] for credit card processing services performed by [Jet Pay] for [RJD, LLC,] pursuant to the Agreement."  D.E. 21.  This averment sufficiently claims facts that plausibly demonstrate the second element.

With regard to the third element, the Amended Complaint similarly alleges facts to show the occurrence of the condition on which Fingerer's liability under the Guaranty is based, namely, the

failure of the Merchant to pay Jet Pay under the Agreement.  More specifically, Paragraphs 20, quoted above, and 21 establish this element.  Paragraph 21 states, "Although demand has been made and is made again herein, [RJD, LLC] failed and refused to pay [Jet Pay] the amount owed to [Jet Pay]."  D.E. 21.  Meanwhile, the Guaranty, which is considered as part of the Amended Complaint as an attachment thereto, specifies that under the Guaranty, Jet Pay may demand payment from Fingerer if the Merchant fails to pay as required under the Agreement.  These allegations adequately allege the third element of breach of guaranty.

Facts satisfying the fourth element, however, do not appear in the Amended Complaint.  In particular, the Amended Complaint contains no allegation that Fingerer failed or refused to perform the promise she allegedly made in the Guaranty.  Put succinctly, no breach of the Guaranty is claimed.  Instead, the Amended Complaint stops short of this contention and simply demands payment from Fingerer in light of the Merchant's alleged breach.  While the contract permits Jet Pay to seek payment from Fingerer upon the Merchant's failure to pay under the Agreement, Fingerer has not breached her Guaranty unless the Merchant has demanded payment under the Guaranty and Fingerer has refused to pay.  Nothing in the Amended Complaint suggests that that occurred.  For this reason only, the Amended Complaint fails to satisfy the pleading requirements under *Twombly* and *Iqbal*, and it must be dismissed.

### D.  Dismissal Without Prejudice

Rule 15(a), Fed. R. Civ. P., provides that after 21 days following service of a pleading, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Under the Rule 15(a) standard, "[a] district court's discretion to dismiss a complaint without leave to amend is "severely restrict[ed]"

by Fed. R. Civ. P. 15(a) . . . .'" *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (citations omitted).  As the Eleventh Circuit has recognized, "Generally, '[w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.'" *Id.* (citation omitted).  Only three exceptions to this rule exist: a district court does not have to permit an amendment "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Because the Court finds that none of these exceptions apply at this time, and further, because Jet Pay has filed only two other versions of the complaint in this matter, the Court dismisses the Amended Complaint without prejudice to seek to file a second amended complaint within 21 days.

### III.  Conclusion

For the foregoing reasons, Defendant Heather Candice Fingerer's Motion to Dismiss Amended Complaint [D.E. 23] is hereby **GRANTED**.  The Amended Complaint is dismissed without prejudice and Jet Pay may seek to file a second amended complaint within 21 days of this Order.

**DONE AND ORDERED** this 12th day of July 2011.

ROBIN S. ROSENBAUM
UNITED STATES MAGISTRATE JUDGE

cc:      Counsel of Record