UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-60722-CIV-ROSENBAUM (CONSENT)

JETPAY, LLC,
a Texas limited liability company,

    Plaintiff,

vs.

HEATHER CANDICE FINGERER, and individual,

    Defendant.
_____/

**ORDER DENYING PLAINTIFF JETPAY, LLC'S
MOTION FOR RECONSIDERATION**

This matter is before the Court on Plaintiff's Motion for Reconsideration [D.E. 72] of the Court's March 6, 2012, Order denying Plaintiff JetPay, LLC's Motion for Summary Judgment Against Defendant Heather Fingerer. [D.E. 61]. The Court has considered the Motion for Reconsideration, Fingerer's Response to JetPay's Motion [D.E. 75], JetPay's Reply [D.E. 76], and the record in this case. Upon consideration and review, the Court denies Plaintiff's Motion for Reconsideration for the reasons set forth below.

***I. Background***

This case arises out of a contractual dispute regarding payments allegedly due to Plaintiff JetPay, LLC, ("JetPay"), by Defendant RJD Stores, LLC, ("RJD, LLC"), and guaranteed by Defendant Heather Fingerer ("Fingerer"), for credit-card processing services that JetPay provided to RJD, LLC.  *See* D.E. 39 at ¶¶ 1, 15, 23.  In its Second Amended Complaint, JetPay set forth one claim against RJD, LLC, for breach of contract (Count I) and one claim against Fingerer for breach of personal guaranties (Count II).

On August 24, 2011, this Court granted JetPay's Motion for Default Judgment against RJD, LLC, awarding damages against RJD, LLC, in the amount of $247,045.09. *See* D.E. 43. Subsequently, JetPay moved for summary judgment against Defendant Heather Fingerer. *See* D.E. 61. On March 6, 2012, this Court denied Plaintiff's Motion. *See* D.E. 71. Essentially, the Court concluded that summary judgment could not be granted because a material question of fact exists regarding whether, under the governing contract ("Agreement"), Fingerer guarantied payments by RJD, LLC, or by a different entity whose payments the Amended Complaint in this case does not allege Fingerer guarantied — RJD Stores, Inc.[1] *See id.*

Following the Court's entry of its Order denying summary judgment, Plaintiff JetPay filed its Motion for Reconsideration of Order Denying JetPay, LLC's Motion for Summary Judgment Against Defendant Heather Candice Fingerer ("Motion for Reconsideration") [D.E. 72]. In its Motion for Reconsideration, JetPay asserts that no disputed material issue of fact exists because even if the contractual language is ambiguous regarding whose payments Fingerer guarantied, the parol evidence makes clear that the parties contracted for Fingerer to guaranty RJD, LLC's payments. *See id.* More specifically, JetPay notes that it is undisputed that RJD, LLC, was the entity that utilized JetPay's services and that, pursuant to the Default Judgment, owes JetPay monies for such services. *Id.* at 2-3. Accordingly, JetPay reasons, it is beyond dispute that Fingerer guarantied RJD, LLC's payments. *Id.* Alternatively, JetPay contends that even if some ambiguity remains, RJD, LLC, and RJD Stores, Inc., are alter egos of each other and were acting as a single business enterprise as a matter of law, so Fingerer should not be able to escape liability on her guaranty, regardless of

---

[1]This Order assumes a familiarity with the facts as set forth in the Court's March 6, 2012, Order. In the interest of efficiency, this Order does not again set forth the material facts in detail here.

whether the Agreement guarantied payments of RJD, LLC, or RJD Stores, Inc. *Id.* at 6-9.

In response, Defendant Fingerer urges that although RJD, LLC, used JetPay's services and owes JetPay money for those services, JetPay did not provide RJD, LLC, with services *pursuant to the governing contract* in which Fingerer guarantied the payments of the "Merchant," the meaning of which is ambiguous under the Agreement. *See* D.E. 75 at 2-3 and 3 n.2. As for JetPay's alter-ego and single-business-enterprise arguments, Fingerer objects to such theories as being raised for the first time in the Motion for Reconsideration. *Id.* at 4-5.

Finally, Jet Play replies that it is not attempting to introduce new theories in its Motion for Reconsideration but instead is simply "presenting the Court with positions it believes the Court should not overlook in defining the 'Merchant' in the Agreement as a matter of law when considering the undisputed parol evidence . . . ." D.E. 76 at 3.

Upon review of the parties' arguments in their briefs, the Court directed the parties to "file a brief regarding what, if any, claim or issue-preclusive effect the default judgment against RJD, LLC, might have against Fingerer under Texas law." *See* D.E. 77. In response, JetPay filed a brief arguing that the default judgment against RJD, LLC, as a matter of Texas law, must be held against Fingerer, while Fingerer asserted the opposite. At JetPay's request, the Court set the issue for oral argument, which occurred on April 24, 2012. Both parties appeared at the hearing and presented argument.

## ***II. Discussion***

"[R]econsideration of a previous order is an extraordinary remedy to be employed sparingly." *Burger King Corp. v. Ashland Equities, Inc.,* 181 F. Supp. 2d 1366, 1370 (S.D. Fla. 2002) (citing *Mannings v. School Board of Hillsborough County*, 149 F.R.D. 235, 235 (M.D. Fla. 1993)). "The 'purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present

3

newly discovered evidence.'" *Id.* at 1369 (S.D. Fla. 2002) (quoting *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992)). Three major grounds justify reconsideration: "(1) an intervening change in the controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Id.* (citing *Offices Togolais Des Phosphates v. Mulberry Phosphates, Inc.*, 62 F. Supp. 2d 1316, 1331 (M.D. Fla. 1999); *Sussman v. Salem Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla 1994)).

JetPay invokes the need to correct manifest errors of law and fact as the basis for seeking reconsideration. *See* D.E. 72 at 1. The Court considers each of JetPay's arguments in turn.

A.   *The Parol Evidence Does Not Establish that No Material Issue of Fact Exists*

JetPay does not argue that the Court erred in concluding that the language of the Agreement is ambiguous. *See* D.E. 72 at 2. Rather, JetPay invokes *Winslow v. Acker*, 781 S.W.2d 322, 325 (Tex. App. 1989) (citation omitted), for the proposition that ambiguity in the language of a contract does not always and necessarily require the denial of summary judgment. *See* D.E. 72 at 3. *Winslow* notes that although, as a general rule, ambiguity in a contract precludes summary judgment, where undisputed parol evidence resolves the ambiguity, summary judgment is appropriate. *Winslow*, 781 S.W.2d at 325.

With this in mind, JetPay argues that the parol evidence of record in this case removes any ambiguity as to whether JetPay contracted with RJD, LLC, or RJD Stores, Inc., in the Agreement.[2]

---

[2]JetPay also contends that the parol evidence that RJD, LLC's tax returns were provided to JetPay in response to an inquiry for the tax returns of the Merchant shows that the Agreement bound RJD, LLC. While such evidence may be indicative of the fact that the Agreement was, in fact, understood by RJD, LLC, to be between RJD, LLC, and JetPay, the tax returns do not fall within the four corners of the Agreement, and JetPay has presented no evidence to show that Fingerer knew that RJD, LLC's tax returns were provided in response to JetPay's request. Instead, the record shows only that Gary Forst, RJD, LLC's chief financial officer, was involved in receiving and responding to the request for the tax returns. *See* D.E. 61 at ¶ 8; D.E. 61-1 at 9,

4

In support of this contention, JetPay cites the Court's recitation of the material facts not in controversy:

> The parties do not dispute that JetPay provided credit-card processing services to RJD, LLC, and RJD, LLC, was the entity that utilized the services of JetPay. D.E. 61 at 3, ¶¶ 9-10; D.E. 68 at 5, ¶ 16. It is further undisputed that monies are owed from RJD, LLC, to JetPay, for the credit-card processing services rendered by JetPay. D.E. 61 at 4, ¶ 13; D.E. 61-1 at 46. Specifically, JetPay obtained a judgment against RJD, LLC, in the amount of $247,045.09, exclusive of interest, attorney's fees and costs, for damages incurred as a result of RJD, LLC's failure to pay contract monies due and owing to JetPay for credit-card processing services performed by JetPay as required by the Agreement. D.E. 61 at 4, ¶ 15; D.E. 61-1 at 22-24.

D.E. 72 at 2-3. JetPay asserts that because the Court found as undisputed facts that RJD, LLC, was the party that accepted JetPay's services and that RJD, LLC, is presently indebted to JetPay for those services, it is clear that the parties intended that RJD, LLC, was the "Merchant" under the Agreement. *Id.* at 3-4. Consequently, JetPay reasons, under the doctrine of collateral estoppel, Fingerer guaranteed RJD, LLC's payment, and JetPay is entitled to summary judgment against Fingerer. *Id.* at 4. In other words, JetPay seeks to use the factual findings from the default judgment against RJD, LLC, in Count I of the Amended Complaint against Fingerer in Count II.

**1. State Law Governs Questions of Res Judicata**

In *Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 498 (2001), the Supreme Court explained that when a federal court exercises diversity jurisdiction, the preclusive effect of that court's judgment is governed by federal common law, which in turn borrows the preclusion law of the state in which the rendering federal court sits. There, the Supreme Court held that a Maryland court was required to apply the claim-preclusion law of California where a California federal court

---

¶ 5.

sitting in diversity had issued a judgment dismissing the plaintiff's claims on statute-of-limitations grounds. *Id.* at 509. The Court ruled that since state, rather than federal, substantive law was at issue, no need for a uniform federal rule existed. *Id.* at 508. "Indeed, nationwide uniformity in the substance of the matter is better served by having the same claim-preclusive rule (the state rule) apply whether the dismissal has been ordered by a state or federal court." *Id.* In so ruling, the Court explicitly upheld *Dupasseur v. Rochereau*, 88 U.S. 130 (1874), for diversity cases, which held that the *res judicata* effect of a federal diversity judgment "is such as would belong to judgments of the State courts rendered under similar circumstances." *Id.*

Although *Semtek* involved the claim-preclusive effect of a dismissal on statute-of-limitations grounds, its holding has consistently been interpreted to encompass federal diversity judgments in general. *See, e.g., Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) ("For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the state in which the rendering court sits"). Put simply, "federal common law determines the scope of judgments rendered by federal courts sitting in diversity. Under federal common law, an enforcing court should apply the law of the state courts in the state where the rendering federal court sits." *Palmer & Cay, Inc. v. Marsh & McLennan Companies, Inc.*, 404 F.3d 1297, 1310 (11th Cir. 2005). Because the Default Judgment against RJD, LLC, was rendered by this Court while sitting in diversity, the claim-preclusive effect of the Default Judgment is governed by Texas state law. *See also Maher v. City of New Orleans*, 516 F.2d 1051, 1056 (5th Cir. 1975)[3] ("Where federal jurisdiction is bottomed on state law, as in a diversity matter, state law principles of collateral estoppel govern . . . .").

---

[3] Pursuant to *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

**2.  Under Texas Law, the Default Judgment Against RJD, LLC, Does Not Bind Fingerer**

"Res judicata is a generic term for the related concepts of claim preclusion (res judicata) and issue preclusion (collateral estoppel) . . . ." *Barnes v. United Parcel Service, Inc.*, ___ S.W.3d ___, 2012 WL 112252, *4 (Tex. App. Jan. 12, 2012) (citing Tex. R. Civ. P. 94; *Barr v. RTC*, 837 S.W.2d 627, 628 (Tex. 1992)).  As applicable here, JetPay urges the Court to find that collateral estoppel precludes Fingerer from arguing that her signature on the Agreement did not guaranty the payments of RJD, LLC, because the Court already entered a default judgment against RJD, LLC, concluding that RJD, LLC, owed payments to JetPay under the Agreement.

"The doctrine of collateral estoppel . . . 'precludes relitigation of ultimate issues of fact actually litigated and essential to the judgment in a prior suit.'" *Id.* at *5 (quoting *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 801 (Tex. 1992), and citing *Barr*, 837 S.W. 2d at 628; *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984); Restatement (Second) of Judgments § 27 (1982)).  Among the purposes of the doctrine of collateral estoppel are the promotion of judicial efficiency, the protection of parties from multiple lawsuits, and the prevention of inconsistent judgments through the relitigation of issues.  *Id.* (citing *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994) (citations omitted)).  To prevail on a claim of collateral estoppel, a party must prove all of the following: "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (3) the facts were essential to the judgment in the first action, and (3) the party against whom collateral estoppel is sought was a party in the first action." *Id.* (citing *Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990); *Houtex Ready Mix Concrete & Materials v. Eagle Constr. & Envtl. Servs., L.P.*, 226 S.W.3d 514, 519 (Tex. App. 2006)).  To avoid offending due process, the party against whom the doctrine of collateral estoppel is asserted must have been either a party or in privity with a party in the first action.  *Sysco*

7

*Food Servs., Inc.*, 890 S.W.2d at 802 (citing *Eagle Props., Ltd.*, 807 S.W.2d at 721; *Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 363 (Tex. 1971); Michael Kimmel, *The Impacts of Defensive and Offensive Assertion of Collateral Estoppel by a Nonparty*, 35 Geo.Wash.L.Rev. 1010, 1014 (1967)).

Fingerer posits that collateral estoppel should not apply in the pending matter because, among other reasons, "this is not a subsequent action" to the one where the default judgment against RJD, LLC, was entered. *See* D.E. 82 at ¶ 9. Second, Fingerer contends, she and RJD, LLC, have disparate interests and therefore lack privity. *Id.*

For its part, JetPay implies that neither of these arguments represents an impediment to the application of the collateral-estoppel doctrine. *See, generally*, D.E. 81. Instead, JetPay directs the Court to *84 Lumber Co., L.P. v. Powers*, ___ S.W.3d ___, 2012 WL 243524 (Tex. App. Jan 26, 2012) ("*84 Lumber*"), and *Mayfield v. Hicks*, 575 S.W.2d 571 (Tex. Civ. App. 1978), urging that these cases require the conclusion that Fingerer is collaterally estopped from contending that she did not guaranty the payments of RJD, LLC, under the Agreement.

In *Mayfield*, the plaintiff sued the primary obligor and its guarantors on equipment-lease agreements. *See Mayfield*, 575 S.W.2d at 573. When the primary obligor failed to answer the complaint or participate in the trial, the trial court entered a default judgment against the primary obligor and in favor of the plaintiff. *Id.* Then, based on the entry of the default judgment, the trial court granted the plaintiff an instructed verdict against the guarantors. *Id.* On appeal, the guarantors argued that they had defenses that pertained to the question of the primary obligor's liability on the lease agreements and that they should have been permitted to prove those defenses. *Id.* The plaintiff retorted that the guarantors were collaterally estopped from putting forth any defenses going to questions regarding the liability of the primary obligor. *Id.* at 573-74.

8

Upon consideration of the parties' contentions, the appellate court agreed with the guarantors. *Id.* In reaching this conclusion, the appellate court stated that the doctrine of collateral estoppel does not apply against a party that has not had the opportunity to defend against the outcome on the previously litigated issue. *See id.* at 574-75. As the court explained, the rule has been applied only in cases where "the primary obligor's liability had been established in an action where the guarantor had an opportunity to defend but either did not so do or did so unsuccessfully, . . . and subsequently attempted to attack that judgment in a later action by the obligee against the guarantor." *Id.* at 574. In *Mayfield*, however, the appellate court found that in responding to the complaint and proceeding to trial, the guarantors had tried to assert the defenses available to their principal in the trial court, and they had not consciously ignored the opportunity to present such defenses. *Id.* Because the default against the primary obligor ensued in the same action in which the guarantors were defendants and no prior lawsuit had occurred, the appellate court concluded, the guarantors had enjoyed no other opportunity to defend. *Id.* As a result, the appellate court held that "the general rule that guarantors have the right to raise any defenses to the guaranteed obligation that the principal may have applies." *Id.* Significantly, the *Mayfield* Court specifically held,

> [W]here a guarantor has notice of the action against his principal and he takes part in the suit, he is not bound by the adjudication of the principal's liability by a default judgment against his principal in the same action. This is true because the guarantor may have had no authority to answer in the principal's behalf or to defend in the name of his principal. Indeed, before collateral estoppel applies, the opportunity to defend must be such that the guarantor can actually control the suit with respect to any defenses including those available to the primary obligor.

*Id.* (citing *U.S. Wire & Cable Corp. v. Ascher Corp.*, 167 A.2d 633, 637 (1961)). Indeed, under this reasoning, even notice that the primary obligor expects the guarantor "to assist" in the conduct of the defense does not alone suffice to bind the guarantor through a judgment against the primary

9

obligor. *Id.* (citing 1 Freeman on Judgments § 449, at 984-85 (5th ed. 1925)). Rather, the guarantor must be in a position "to control" the defense of the primary obligor. *Id.*

JetPay points to *84 Lumber* as further clarifying the requirement that a guarantor be in a position "to control" the defense of the primary obligor. In *84 Lumber*, David Powers Homes, Inc. ("Powers Homes"), the obligor, applied for credit with 84 Lumber Co. ("84 Lumber"). *84 Lumber* 2012 WL 243524 at *1. The application was signed by David Powers, "as officer" and president of Powers Homes, and it stated that the signature set forth on the application certified that Powers was the owner, general partner, or president of Powers Home and that he "unconditionally and irrevocably personally guarantee[d] this credit account and [paym]ents of any and all amounts due by [Power Homes] . . . ." *Id.* When the credit line secured by the application became delinquent, 84 Lumber sued Powers Homes and Powers, among others. *Id.*

Powers Homes and Powers both filed a general denial, but Powers Homes further denied the veracity of the sworn account, the amount of the claims, and the crediting of all just offsets. *Id.* Powers challenged the capacity in which he was sued, pled a failure of consideration, and claimed the guarantee was ambiguous as to whether an individual was liable in his individual capacity. *Id.* The trial court entered a post-answer default judgment against both defendants but later granted a motion to set aside the default judgment. *Id.* 84 Lumber then sought summary judgment against Powers and Powers Homes, but only Powers responded. *Id.* at 2. The trial court granted 84 Lumber's motion against Powers Homes but denied it against Powers individually, instead granting Powers's cross-motion for summary judgment against 84 Lumber and holding that Powers was not liable to 84 Lumber as a guarantor on Powers Homes's account. *Id.*

On appeal, the court first held that the contract was not ambiguous and that Powers's signature created both corporate and individual liability. *Id.* at *2 - 4. Then the appellate court

considered the scope of the guaranty. *Id.* at *6. Powers challenged the applicability of the guaranty to purchases that he alleged were not made by Powers Homes but instead were made by David Powers Homes S.T., Ltd., or David Powers Homes W.O., Ltd. *Id.* 84 Lumber, on the other hand, asserted that Powers was bound by the judgment against Powers Homes and, thus, individually owed what the trial court had concluded that Powers Homes owed 84 Lumber. *Id.*

In evaluating the parties' arguments, the appellate court first recognized the rule that "[a] judgment against the principal obligor conclusively establishes the extent of the principal's liability with respect to a guarantor, if that judgment is obtained in a suit of which the guarantor had full knowledge and an opportunity to defend . . . ." *Id.* at *7 (quoting *Mayfield*, 575 S.W.2d at 574) (internal quotation marks omitted). Then the court acknowledged that this rule does not apply unless "the guarantor can actually control the suit with respect to any defenses including those available to the primary obligee." *Id.* (quoting *Mayfield*, 575 S.W.2d at 574) (internal quotation marks omitted). Applying this framework to the *84 Lumber* facts, the court concluded that Powers was, in fact, bound by the scope of the judgment against Powers Homes. *Id.* As the court explained, both Powers and Powers Homes were parties to the lawsuit where the judgment was entered; Powers served as the president of Powers Homes and was fully aware of the suit; Powers and Powers Homes were represented by the same attorneys in the lawsuit; and, under the language of the contract, Powers Homes could not have entered into the contract with 84 Lumber without the active participation of Powers, its president; and it similarly could not have defended itself in the litigation without Powers's involvement. *Id.* Based on these factors, the court determined that Powers enjoyed the ability to actually control Powers Homes's defenses in the lawsuit. As a result, as the guarantor on the agreement between Powers and Powers Homes, Powers was properly bound by the judgment against Powers Homes. *Id.*

JetPay urges the Court here to find that, like Powers, Fingerer is bound by judgment against the obligor — in this case, RJD, LLC. In support of this position, JetPay draws a comparison between Powers's position as the president of Powers Homes and Fingerer's service as the corporate secretary of RJD, LLC. *See* D.E. 81 at 4. JetPay further points to the fact that Fingerer and David Fingerer each filed affidavits admitting that Fingerer served as the corporate secretary for RJD, LLC, with the authority to bind RJD, LLC, and that both Fingerer and David Fingerer were fully aware of the lawsuit against RJD, LLC. *Id.* at 4-5. Finally, JetPay asserts that "RJD, LLC could neither have entered into the Agreement with JetPay nor defended itself in the litigation without the active participation of Fingerer as signatory for RJD, LLC. Fingerer had an opportunity to defend and failed to defend RJD, LLC, and allowed RJD, LLC to admit the facts properly pled by JetPay by allowing a default to be entered."[4] *Id.* at 5.

But JetPay ignores the significance of the role of David Fingerer in RJD, LLC, and in this litigation. For example, JetPay concedes that Fingerer's husband David Fingerer — not Fingerer herself — was the managing member of RJD, LLC, and accepted service in this lawsuit on behalf of RJD, LLC.[5] *Id.* David Fingerer is not Fingerer, and in the absence of evidence to the contrary, any authority he might have cannot fairly be attributed to Fingerer.

Nor has JetPay presented any evidence that Fingerer had an opportunity to actually control

---

[4]JetPay also claims that "Fingerer, herself, has admitted that RJD, LLC utilized JetPay's services and owes JetPay money pursuant to the Agreement." D.E. 81 at 5. The Court understands Fingerer's position in these regards, however, as acknowledging that as a result of the Default Judgment against RJD, LLC, RJD, LLC, owes JetPay money under the Agreement, not that Fingerer concedes that at the time that she signed the guaranty in the Agreement, she understood that RJD, LLC, was the "Merchant" under the Agreement.

[5]While JetPay also notes that David Fingerer accepted service on behalf of Fingerer, the Court finds nothing about this fact probative of Fingerer's ability to control RJD, LLC's defenses in this case.

the defenses that RJD, LLC, could have raised in this case. First, unlike Powers, who was the president of the obligor, Fingerer is the secretary. Nothing in the record suggests that, as the secretary, Fingerer enjoyed the ability control the defenses of RJD, LLC, in this lawsuit. Indeed, contrary to JetPay's contention and unlike Powers Homes in *84 Lumber*, RJD, LLC, could have entered into the Agreement without Fingerer — as long as another corporate officer had signed it. Moreover, to the extent that JetPay relies on Fingerer's signature on the Agreement to arrive at the conclusion that she could control RJD, LLC's defenses in this litigation, that reliance is misplaced. Even setting aside the issue of whether a corporate secretary's signature guarantying the payments of the corporation for which she is the secretary necessarily means that the corporate secretary must have the ability to control the defenses of the obligor in a legal action against the obligor under the agreement, as explained in the original Order denying JetPay's Motion for Summary Judgment, the Agreement is ambiguous on its face as to whether Fingerer guarantied the payments of RJD, LLC, or RJD, Inc.

Second, no evidence of record indicates that RJD, LLC, and Fingerer are represented by the same attorney. Whereas in *84 Lumber*, Powers Homes originally appeared on the record and defended itself, thus enabling the court to discern that Powers Homes and Powers were both represented by the same counsel, here, RJD, LLC, never responded in any way to the Complaint or Amended Complaint, and no attorney ever appeared on behalf of RJD, LLC. Furthermore, to the contrary, Fingerer has stated that she and RJD, LLC, are not represented by the same counsel.

Third, JetPay has pointed to nothing else about this litigation — and the Court is similarly unaware of any such evidence — that suggests that Fingerer had the power to actually control the defenses of RJD, LLC, in this case. Under these circumstances, the Court finds the facts of this case to be far more similar to those involved in *Mayfield* and therefore concludes that Fingerer is not

13

collaterally estopped from arguing that the Agreement did not bind RJD, LLC.

### B. The Alter-ego and Single-business-enterprise Theories Are Improper for Reconsideration

Plaintiff next argues in its Motion for Reconsideration that the Court should find as a matter of law that RJD, Inc., and RJD, LLC, are alter egos and were acting as a single business enterprise as a matter of law, and therefore, they should both be considered the Merchant under the Agreement. *See* D.E. 72 at 7. Fingerer in her Response retorts that JetPay raises these theories for the first time in its Motion for Reconsideration, and neither theory falls under any of the grounds justifying the extraordinary remedy of reconsideration. *See* D.E. 75 at 4.

This Court agrees with Fingerer. Motions for reconsideration are not mechanisms for advancing arguments that were previously available to parties but were not utilized. *See Z.K. Marine, Inc. v. M/V Archigetis,* 808 F. Supp. 1561, 1563 (S.D. Fla. 2002)*; see also Mid-Continent Cas. Co. v. Centerline Homes Constr., Inc.*, 2011 WL 3704255 (S.D. Fla. Aug. 23, 2011) (stating that "a Motion for Reconsideration may not be used to present argument previously available but not raised"); *Point Blank Solutions, Inc. v. Toyobo Am., Inc.*, 2011 WL 2214357 (S.D. Fla. June 7, 2011) (indicating that parties may not re-litigate prior matters, bring up arguments or present evidence that could have been raised prior to the entry of the court's order).

Here, the parties previously argued the merits of Plaintiff's Motion for Summary Judgment, and Plaintiff never raised the alter-ego or single-business-enterprise theories in support of that Motion. Nevertheless, the authority offered and theories asserted were available before entry of the Court's Order on Plaintiff's Motion for Reconsideration. Under these circumstances, the Court will not consider these theories, raised for the first time in the context of the Motion for Reconsideration.

### CONCLUSION

For the foregoing reasons, it is hereby **ORDERED and ADJUDGED** that Plaintiff's Motion

for Reconsideration of the Court's March 6, 2012, Order Denying Plaintiff JetPay, LLC's Motion for Summary Judgment Against Defendant Heather Fingerer [D.E. 61] is **DENIED**.

**DONE AND ORDERED** at Fort Lauderdale, this 24th day of April 2012.

_____
ROBIN S. ROSENBAUM
United States Magistrate Judge

cc:   Counsel of record